**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ANDRE LANE, | ) |
|  | ) |
| Petitioner, | ) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Defendant. | ) |

Civil Action No. 14-731 (RDM)

## <u>MEMORANDUM OPINION</u>

Petitioner Andre Lane, proceeding *pro se*, filed this action pursuant to 28 U.S.C. § 2254, seeking to set aside his 2008 conviction and requesting a new trial in D.C. Superior Court. *See* Dkt. 1. Petitioner alleges that he was denied effective assistance of appellate counsel and that the D.C. Court of Appeals erred in affirming his conviction. *See* Dkt. 1 at 4. Respondent United States has moved to dismiss the petition as time-barred. *See* Dkt. 7. Before addressing that motion, the Court must consider whether it has jurisdiction to adjudicate a § 2254 petition that challenges the effectiveness of appellate counsel before the D.C. Court of Appeals but that seeks relief on behalf of a prisoner who is not incarcerated in the District of Columbia.

For the reasons explained below, the Court concludes that it has jurisdiction and that, as Respondent contends, the petition is untimely. Accordingly, Respondent's Motion to Dismiss (Dkt. 7) is **GRANTED,** and the petition is **DISMISSED**.

# I.  BACKGROUND

Petitioner, who is currently incarcerated at a federal penitentiary in Kentucky, was tried and convicted of first-degree murder and sentenced by the Superior Court of the District of Columbia to thirty-six years to life imprisonment.  *See Lane v. United States*, No. 08-CF-951 (D.C. Dec. 13, 2011) (unpublished); Dkt. 7-1 (Ex. A).  On direct appeal, Petitioner argued that the trial court erred by mistakenly giving the jury an outdated jury instruction and then confusing the jury by giving a corrected supplemental instruction.  *See id.*  He argued that, rather than giving the supplemental instruction, the trial court should have granted a mistrial *sua sponte*.  *Id.* On December 13, 2011, the D.C. Court of Appeals affirmed his criminal conviction, holding that "the original instruction did not compromise the fundamental fairness of the trial" and that "it was not plain error for the trial court to decline, *sua sponte*, to declare a mistrial."  *Id.*  Although Petitioner did not file a petition for a writ of certiorari, his time to do so would have expired on March 12, 2012.

On May 30, 2012, Petitioner filed a motion in the D.C. Court of Appeals to recall the mandate, Dkt. 7 at 5—the required mechanism for raising an ineffective assistance of appellate counsel claim in the D.C. courts, *see Watson v. United States*, 536 A.2d 1056, 1060 (D.C. 1987) (en banc).  He argued that his appellate counsel "was ineffective for failing to raise an impeachment violation either in his brief or by filing a D.C Code § 23-110 motion raising an ineffective assistance of trial counsel claim."  *Lane v. United States*, No. 08-CF-951 (D.C. Mar. 4, 2013) (unpublished), at Dkt. 7-2 (Ex. B).  On March 4, 2013, the D.C. Court of Appeals denied that motion, concluding that Petitioner had "failed to demonstrate that he was denied the effective assistance of counsel on appeal."  *Id.*

On April 25, 2014, Petitioner filed this habeas action pursuant to 28 U.S.C. § 2254.  *See* Dkt. 1.  The United States moved to dismiss, arguing that the petition is time-barred.  *See* Dkt. 7 at 2-6; 28 U.S.C. § 2244(d)(1).  Petitioner then filed a supplemental memorandum in support of his petition, which did not address timeliness.  *See* Dkt. 8.  The Court subsequently cautioned Petitioner that if he failed to address the arguments in the United States' motion, those arguments could be treated as conceded and the petition dismissed on that basis.  *See* Dkt. 9; Local Civil Rule 7(b); *Hopkins v. Women's Div., General Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)), *aff'd*, 98 F. App'x 8 (D.C. Cir. 2004).  Petitioner filed an opposition on March 19, 2015.  *See* Dkt. 10 at 1.

## II.  ANALYSIS

Although neither party has raised the issue, the Court must first consider its jurisdiction to hear this action.  *See Prakash v. Am. Univ.*, 727 F.2d 1174, 1179 (D.C. Cir. 1984).

### A.  Subject-Matter Jurisdiction

Title 28 U.S.C. § 2254 authorizes the district courts to issue writs of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court . . . on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Because "D.C. local courts are treated as 'state' courts for purposes of federal habeas-corpus jurisdiction," *Gorbey v. United States*, 55 F. Supp. 3d 98, 102 (D.D.C. 2014) (citing *Milhouse v. Levi*, 548 F.2d 357, 360 n.6 (D.C. Cir. 1976)); *see also Madley v. U.S. Parole Comm'n*, 278 F.3d 1306, 1308-1310 (D.C. Cir. 2002), § 2254 applies to cases brought by D.C. prisoners, *see Williams v. Martinez*, 586 F.3d 995, 1002 (D.C. Cir. 2009).  This jurisdictional grant, however, is subject to three potentially applicable limitations.

First, D.C. Code § 23-110 "gives the [D.C.] superior court exclusive jurisdiction [over] virtually all collateral challenges" to convictions entered in the D.C. courts. *Head v. Wilson*, 792 F.3d 102, 104 (D.C. Cir. 2015). That provision, which the Supreme Court upheld in the face of a Suspension Clause challenge in *Swain v. Pressley*, 430 U.S. 372 (1977), allows a prisoner to move the D.C. Superior Court to vacate, set aside, or correct a conviction or sentence that was imposed in violation of the U.S. Constitution or the laws of the District of Columbia, *Head*, 792 F.3d at 104. It further provides, however, that a petition for habeas corpus "shall not be entertained . . . by any Federal or State court" by "a prisoner who is authorized to apply for relief" under § 23-110, unless "it . . . appears that the remedy" available under § 23-110 "is inadequate or ineffective to test the legality of" the prisoner's "detention." D.C. Code § 23-110(g).[1]

Thus, in the ordinary course, § 23-110(g) would likely bar Petitioner from seeking collateral relief before this Court. Petitioner, however, is not challenging the lawfulness of the proceedings that occurred before the Superior Court, but rather the effectiveness of his *appellate* counsel. In *Williams v. Martinez*, the Court of Appeals spoke to just this issue and held that § 23-110(g) does not pose a barrier to federal jurisdiction to consider a § 2254 petition asserting ineffective assistance of appellate counsel. 586 F.3d at 997-98. As the Court of Appeals explained, § 23-110(g) "only divests federal courts of jurisdiction to hear habeas petitions by

---

[1] D.C. Code § 23-110(a) provides that a "prisoner in custody under sentence of the Superior Court" may "move the [Superior Court] to vacate, set aside, or correct the sentence," and § 23-110(g) provides that "[a]n application for a writ of habeas corpus" by such a prisoner "shall not be entertained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

prisoners who could have raised viable claims pursuant to section 23-110(a)," and "the Superior Court lacks authority to entertain a section 23-110 motion challenging the effectiveness of appellate counsel." *Id.* at 998.  Instead of proceeding under § 23-110(a), the D.C. Court of Appeals has held that a prisoner seeking to raise a challenge to the effectiveness of appellate counsel must file a motion to recall the mandate with the appellate court and that that motion "is an 'independent' action separate and apart from a section 23-110 motion." *Id.* (quoting *Wu v. United States*, 798 A.2d 1083, 1091 (D.C. 2002)).  Accordingly, § 23-110(g) does not apply to claims of ineffective assistance of appellate counsel.  *Id.*  Petitioner thus clears the first jurisdictional hurdle.

The second jurisdictional question involves application of the "immediate-custodian rule."  The federal habeas statute specifies that an application for a writ of habeas corpus "shall . . . name . . . the person who has custody over" the petitioner, 28 U.S.C. § 2242, and that the writ "shall be directed to the person having custody of the person detained," *id.* § 2243.  Thus, as the Supreme Court recognized in *Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004), the proper respondent to a federal habeas petition is ordinarily the prisoner's "immediate custodian"—most often, the warden of the facility where the petitioner is imprisoned.  *See also Blair-Bey v. Quick*, 151 F.3d 1036, 1039 (D.C. Cir. 1998).  "If a prisoner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." *Rules Governing Section 2254 Cases in the United States District Courts* Rule 2(a); *see also Padilla*, 542 U.S. at 450 n.18.

Here, although Petitioner's immediate custodian is the warden of the federal penitentiary at Big Sandy in Kentucky, the petition does not name him as the respondent but rather names the "United States of America."  *See* Dkt. 1.  This flaw, however, does not undercut the Court's

subject-matter jurisdiction.  Although this precise question was not directly at issue in *Padilla* because Padilla sought relief from the President, the Secretary of Defense and the Commander of the Naval Brig, who was, in fact, his immediate custodian, 542 U.S. at 432, the analysis in the Court's various opinions provides substantial guidance.  Most significantly, the majority opinion made clear that, in referring to the immediate-custodian rule as a "jurisdictional" requirement, it was not using the term "in the sense of subject-matter jurisdiction of the District Court."  *Id.* at 434 n.7.  In responding to the dissent's reliance on prior cases "in which the immediate custodian rule has not been strictly applied," *id.* at 461 n.4 (Stevens, J., dissenting), moreover, the majority noted, among other things, that the respondents in those cases "did not challenge their designation as inconsistent with the immediate custodian rule," *id.* at 450 n.18.  That is, the majority treated those cases as ones in which the immediate-custodian defense was waived— something that could not occur if the omission undercut the District Court's subject-matter jurisdiction.  And, any doubt on this question was put to rest by the *Padilla* concurrence, which clarified the position of two of the five Justices voting in the majority.  Writing for himself and Justice O'Connor, Justice Kennedy explained that the immediate-custodian rule has not been consistently applied, that the rule is "not jurisdictional in the sense of a limitation on subject-matter jurisdiction," and that the rule "can be waived by the Government."  *Id.* at 451-52 (Kennedy, J., concurring).

The Court, of course, cannot typically require compliance with an order directed at the wrong party—if the petition named the Queen of England, for example, the Court could not meaningfully order that she release the Petitioner from custody.  But, in the present context, there is little doubt that the federal government is fully capable of granting the requested relief.  In *Crawford v. Jackson*, 323 F.3d 123, 126 (D.C. Cir. 2003), moreover, the Court of Appeals

concluded that the immediate-custodian rule was satisfied when the United States appeared, waived any objection to lack of personal jurisdiction, and consented to the substitution of the warden as the proper respondent.  Here, the United States has implicitly done as much.  It has responded to the petition without invoking the immediate-custodian rule, Dkt. 7, it has done so fully cognizant of the fact that the United States cannot be sued in its own name without the unambiguous consent of Congress, *see, e.g.*, *United States v. Williams*, 514 U.S. 527, 531 (1995), and it has done so despite the fact that the Court issued an Order to Show Cause requiring that "the *custodial* Respondent," Dkt. 2 (emphasis added), respond to the petition and directing that the United States Marshal serve a copy of the Order to Show Cause on both "Petitioner's Warden" and the United States Attorney for the District of Columbia, *id.*  It has also done so against the backdrop of decades of authority holding that courts are required to construe *pro se* pleadings "liberally," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), "so as to do justice," Fed. R. Civ. P. 8(e).  It is thus fair to conclude that the government has waived any defense premised on the immediate-custodian rule and has acquiesced in the substitution of the Warden of the Big Sandy Penitentiary, in his official capacity, as the proper respondent.[2]

---

[2]   *See Jackson v. Chatman*, 589 F. App'x 490, 491 n.1 (11th Cir. 2014) (per curiam) (noting that district court had *sua sponte* ordered that warden be substituted as the proper respondent); *Von Kahl v. United States*, 321 F. App'x 724, 727 n.1 (10th Cir. 2009) ("Whoever the proper respondent may be, the Government has filed a brief on his or its behalf.  We therefore proceed to the merits."); *Flynn v. Kansas*, 299 F. App'x 809, 811 n.3 (10th Cir. 2008) (holding that State of Kansas had waived any objection to the improper naming of the State of Kansas and the State Attorney General as respondents); *Smith v. Idaho*, 392 F.3d 350, 355-56 (9th Cir. 2004) (holding that State of Idaho had waived objection to immediate-custodian rule); *Cunningham v. Peters*, 941 F.2d 535, 535 n.* (7th Cir. 1991) (noting that the court had substituted the proper respondent after member of the panel asked at oral argument for the named respondent "People of Illinois" to supply the court with the name of the proper respondent); *West v. Louisiana*, 478 F.2d 1026, 1029-30 (5th Cir. 1973) (construing petition as naming proper respondent because the locus of detention was evident on the face of the petition, the "[f]ailure to name a proper respondent is a procedural rather than a jurisdictional defect," and denial of the petition on the ground that it

The third jurisdictional issue poses the most substantial hurdle to the resolution of the pending petition.  Under 28 U.S.C. § 2241(a), district courts are authorized to grant relief "within their respective jurisdictions."  The Supreme Court has "interpreted this language to require 'nothing more than that the court issuing the writ have jurisdiction over the custodian.'"  *Padilla*, 542 U.S. at 442 (quoting *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973)).  What this means, however, has evolved over the years.

The relevant precedent starts with the Supreme Court's decision in *Braden v. 30th Judicial Circuit Court of Kentucky*, which considered whether a prisoner serving a sentence in an Alabama prison could bring a habeas action in the U.S. District Court for the Western District of Kentucky to challenge a detainer issued by a Kentucky court.  410 U.S. at 488.  It was in this context that the Court observed that, "[r]ead literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian."  *Id.* at 495.  As it explained, "[s]o long as the custodian can be reached by *service of process* the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring" his release, "*even if the prisoner himself is confined outside the court's territorial jurisdiction*."  *Id.* (emphasis added).  The Supreme Court, moreover, concluded that its decision in *Ahrens v. Clark*, 335 U.S. 188 (1948), which "indicat[ed] that the prisoner's presence within the territorial confines of the district is an invariable prerequisite to the exercise of the District Court's habeas corpus jurisdiction," *id.* at 495, had been overtaken by "developments" and that the Court could "no longer view that decision as establishing an inflexible jurisdictional rule," *id.* at 497, 499-500.  Against this background, the Supreme Court

---

improperly named the State of Louisiana "would give an unreasonably narrow reading to the habeas corpus statute."), *vacated in part*, 510 F.2d 363 (5th Cir. 1975).

held that "[s]ince the petitioner's absence from the Western District of Kentucky did not deprive the court of jurisdiction, and since the respondent was properly served in that district," the federal court in Kentucky had jurisdiction over the case. *Id.* at 500. The Supreme Court did not retreat from the view that "in many instances the district in which petitioners are held" would constitute the proper forum, but it treated the issue as one of venue, rather than jurisdiction. *Id*.

Following *Braden*, the Court of Appeals for this Circuit considered a similar issue in *Chatman-Bey v. Thornburgh*, 864 F.2d 804 (D.C. Cir. 1988) (en banc). That case raised the question whether a federal prisoner incarcerated outside the District of Columbia could bring a challenge in this district to his parole eligibility date. *Id.* at 805. Citing *Braden*, the Court of Appeals held that "it can no longer be maintained that a federal court outside the district of incarceration lacks subject matter jurisdiction over a habeas claim" and that "venue considerations were to apply in the determination of the forum in which habeas should be brought." *Id.* at 811-12. As the Court explained, *Braden* taught that "physical presence of [the petitioner] within this district is not required for the federal court of this district to have jurisdiction over [the] habeas claim." *Id.* at 813. Rather, the place of the prisoner's physical presence merely goes to venue. "[V]enue considerations may, and frequently will, argue in favor of adjudication of the [petition] in the jurisdiction where the habeas petitioner is confined," *id.*, but in some circumstances the location "where all of the material events took place" and where "the records and witnesses pertinent to petitioner's claim" are located may be more appropriate, *id.* at 812 (quotation marks omitted). Finally, *Chatman-Bey* held that, although the District Court would have lacked personal jurisdiction over the warden, "the government failed in its answer to interpose as defenses either improper venue or lack of personal jurisdiction over the warden," and it was thus "elementary" that those defenses were waived. *Id.* at 813.

This, then, was the law in this Circuit for many years.  A habeas petitioner was generally required to name his or her immediate custodian as the respondent and, if the matter was raised by the government, would need to demonstrate personal jurisdiction and venue.  But the presence of the petitioner's immediate custodian in this district was not a jurisdictional requirement.  That, however, arguably changed with the Supreme Court's decision in *Rumsfeld v. Padilla*, 542 U.S. 426.

*Padilla* involved a challenge to the jurisdiction of the U.S. District Court for the Southern District of New York to consider a habeas petition seeking the release of a U.S. citizen detained in South Carolina by the Department of Defense as an enemy combatant.  *Id.* at 430.  The Supreme Court held that the New York court lacked jurisdiction and that the habeas petition should have been brought, instead, in the District of South Carolina, where the petitioner was being held.  In reaching this conclusion, the Court construed *Braden*—and its observation that § 2242(a) requires "nothing more than that the court issuing the writ have jurisdiction over the custodian"—narrowly.  *Id.* at 442.  Thus, where *Chatman-Bey* read *Braden* to treat the "jurisdiction over the custodian" requirement as a traditional question of personal jurisdiction, 864 F.2d at 812, *Padilla* expressly rejected the contention that *Braden* "stand[s] for the proposition that jurisdiction will lie in *any* district in which the respondent is amenable to service of process," 542 U.S. at 443 (emphasis added)—the Court thus rejected the so called "long-arm approach to habeas jurisdiction," *id.* at 445.  Rather, under *Padilla*, "a district court may not entertain a habeas petition unless the respondent custodian is within its territorial jurisdiction." *Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1239 (D.C. Cir. 2004).  *See also Padilla*, 542 U.S. at 444 ("[T]hat dicta [in *Braden*] did not indicate that a custodian may be served with process *outside* of the district court's territorial jurisdiction.").  The *Padilla* Court explained that

this was consistent with *Braden*, as the "custody" challenged in that case was the detainer issued by the Kentucky court and not Braden's then-existing confinement in an Alabama prison; the relevant "custodian"—the Kentucky warden—was indeed located within the territorial jurisdiction of the district court reviewing the habeas petition. 542 U.S. at 444-45. Because *Braden* did not involve a "challenge[] to present physical custody," the overlap that typically applies to the prisoner's "district of confinement" and "the district court that has territorial jurisdiction over the proper respondent" did not apply. *Id.* at 444.

*Padilla* thus announced a "simple rule" for "core" habeas proceedings that challenge present physical confinement: "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Id.* at 447. The apparent simplicity of that rule, does not, however, resolve the question of whether this Court can adjudicate the instant habeas petition, where the proper respondent is located outside of this Court's territorial jurisdiction but where the government has not raised the issue.

As with the immediate-custodian rule, the *Padilla* Court made clear that its discussion of the territorial-jurisdiction requirement did not use the word "jurisdiction" "in the sense of subject-matter jurisdiction of the District Court." *Id.* at 435 n.7. And, again, Justice Kennedy's concurring opinion emphasized this point. Joined by Justice O'Connor, he explained that "the immediate-custodian and territorial-jurisdiction rules are like personal-jurisdiction or venue rules, [and] objections to the filing of petitions based on those grounds can be waived by the Government." *Id.* at 452 (Kennedy, J., concurring). Similarly, the four dissenting Justices— Justices Stevens, Souter, Ginsburg, and Breyer—stressed that "the question of the proper forum to determine the legality of Padilla's incarceration is not one of federal subject-matter

jurisdiction," and thus "[f]ederal courts undoubtedly have the authority to issue writs of habeas corpus to custodians who can be reached by service of process 'within their respective jurisdictions.'"  *Id.* at 463 (Stevens, J., dissenting).  There is, accordingly, no basis to conclude that *Padilla*—a case in which the government affirmatively moved to dismiss based on both the failure to name the proper respondent and the District Court's lack of jurisdiction over that respondent, *see id.* at 432; *id.* at 453 (Kennedy, J., concurring)—overruled the longstanding rule that the government may waive an objection to the petitioner's failure to file his petition in the jurisdiction of his confinement.  *See Chatman-Bey*, 864 F.2d at 813; *see also Moore v. Olson*, 368 F.3d 757, 759-60 (7th Cir. 2004) (holding Warden of Leavenworth Penitentiary, located in Kansas, waived an objection to adjudication of petition in the Northern District of Illinois); *Simon v. United States*, 359 F.3d 139, 143 & n.9 (2d Cir. 2004) (stating that the government waived any objection to petitioner's failure to file in the district where his custodian was located—the Northern District of Georgia); *Aziz v. Leferve*, 830 F.2d 184, 186 (11th Cir. 1987) (holding that petitioner's New York custodians waived objection to lack of personal jurisdiction in the Middle District of Florida).

     *Stokes v. United States Parole Commission* is not to the contrary.  True, in that case the D.C. Circuit rejected the petitioner's contention that "the Supreme Court 'has abandoned an inflexible jurisdictional rule,' based upon the territorial jurisdiction of the district court, 'in favor of explicit reliance on modern principles of personal jurisdiction and service of process.'" *Stokes*, 374 F.3d at 1239.  The Court further held that any "[d]icta to the contrary in . . . *Chatman-Bey v. Thornburgh* . . . [has] been overtaken by *Padilla*."  *Id.*  In *Stokes*, however, unlike in this case, the Government moved to dismiss for lack of personal jurisdiction.  *Id.* at 1237.  The decision, accordingly, does not address whether the territorial-jurisdiction

12

requirement (or the immediate-custodian rule) is subject to waiver.  The decision, moreover, at least hints that waiver is available, since it notes that the *dicta* in *Chatman-Bey* was overtaken by *Padilla*, but says nothing about *Chapman-Bey*'s *holding*, which was that the government had "waived" the defense by failing to assert it in a pre-answer motion or responsive pleading. *Compare id.* at 1239, *with Chatman-Bey*, 864 F.2d at 813.[3]

Against this background, the Court concludes that, like the immediate-custodian requirement, the territorial-jurisdiction rule is subject to waiver.  The en banc Court of Appeals embraced this view in *Chatman-Bey*, and this Court is unable to conclude that either the Supreme Court's decision in *Padilla* or any subsequent decision of the D.C. Circuit has overruled that holding.  Although the majority opinion in *Padilla* contains language broadly declaring that a habeas action must be brought in the jurisdiction where the prisoner is detained, the waiver issue was not presented in *Padilla* and, in any event, six Justices embraced a view of the law that would permit waiver of the immediate-custodian and territorial-jurisdiction requirements. Moreover, the same day that the Supreme Court decided *Padilla*, it also issued its decision in *Rasul v. Bush*, which reaffirmed that *Braden* overruled *Ahrens*' strict "jurisdictional holding" and, significantly, cited *Chatman-Bey* with approval.  542 U.S. 466, 479 n.9 (2004).  And finally,

---

[3]  A further issue arguably left open by *Padilla*, which concerned a habeas challenge under § 2241, is the applicability of the Supreme Court's holding to petitions, like this one, brought under § 2254.  The *Padilla* dissent identified a number of cases in which the immediate custodian was not named as the respondent.  *Padilla*, 542 U.S. at 461 n.4 (Stevens, J., dissenting).  In response, the majority distinguished § 2254 petitions from those brought under § 2241.  As to § 2254 petitions, the Court wrote, "Congress has authorized . . . petitioners challenging present physical custody to name either the warden *or* the chief state penal officer as a respondent."  *Id.* at 450 n.18 (majority opinion) (emphasis in original).  It is unclear how this qualification might apply to D.C. prisoners, who, pursuant to D.C. Code §§ 24-101 and 24-201.26, are held in correctional facilities designated by the Attorney General of the United States and generally operated or contracted for by the federal Bureau of Prisons.

the conclusion that waiver is available is further bolstered by the D.C. Circuit's more recent

decision in *Williams v. Martinez*, 586 F.3d 995.  That case, like this one, involved a § 2254

challenge to a D.C. conviction based on the alleged ineffective assistance of appellate counsel.

Although the petitioner was incarcerated at the Allenwood Penitentiary in White Deer,

Pennsylvania, the U.S. District Court for the Middle District of Pennsylvania transferred the case

to this district pursuant to 28 U.S.C. § 1404(a) on the ground that (in addition to convenience)

the "action might have been brought" here in the first instance.  *Williams v. Martinez*, No. 4:CV-

08-1053, 2008 WL 2310834, at *2 (M.D. Pa. June 3, 2008).  The District Court and the D.C.

Circuit then addressed whether § 23-110 posed a jurisdictional barrier to resolution of the

petition.  Although focusing on this distinct threshold jurisdictional issue, neither court raised

any question regarding territorial jurisdiction or whether the transferor court was correct that the

"action might have been brought here" in the first instance.  *See Williams v. Martinez*, 559 F.

Supp. 2d 56, 57 (D.D.C. 2008), *rev'd and remanded*, 586 F.3d 995.

*   *   *

In sum, the petition incorrectly names as respondent the United States, rather than the

Warden of the Big Sandy Penitentiary in Kentucky, and the petition was incorrectly brought in

this jurisdiction, rather than in the Eastern District of Kentucky where the Big Sandy Penitentiary

is located.  The government, however, has responded to the petition without asserting either

defect.  Under these circumstances, the Court could proceed in one of two ways.  First, it could

transfer the action to the United States District Court for the Eastern District of Kentucky.  *See*

*Chatman-Bey*, 864 F.2d at 813-14.  Alternatively, it could treat the immediate-custodian and

territorial-jurisdiction requirements as waived and proceed to the merits.  Here, the Court

concludes that the second course would promote judicial economy and the interests of justice.

This Court is already familiar with the case and the government's response to the petition is fully briefed and ready for resolution.

The Court, accordingly, turns to the statutory defense raised in the government's Motion to Dismiss (Dkt. 7) the petition.  As explained below, the Court concludes that the petition must be dismissed as untimely.

**B.  Timeliness**

The deadline to file a § 2254 petition is governed by 28 U.S.C. § 2244(d).  *See, e.g.*, *Head*, 792 F.3d at 106.  Section 2244(d)(1) provides in relevant part that

> [a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . .

28 U.S.C. § 2244(d)(1).  The limitations period is then tolled during the pendency of "a properly filed application for State post-conviction or other collateral review."  *Id.* § 2244(d)(2).

Petitioner's conviction "became final" on March 12, 2012, ninety days after it was affirmed.  *See* S. Ct. R. 13.1; *see also Clay v. United States*, 537 U.S. 522, 527 (2003) (criminal conviction becomes final "when the time for filing a certiorari petition expires").  At that point, the clock ran for a little over two and a half months, until Petitioner moved to recall the mandate on May 30, 2012.  Dkt. 7 at 5.  The clock was then tolled until the motion to recall the mandate was denied on March 4, 2013.  *See* 28 U.S.C. § 2244(d)(2); *Lawrence v. Florida*, 549 U.S. 327, 335-36 (2007).  Thus, the clock ran for approximately sixteen months and one week between March 12, 2012, the date on which Petitioner's conviction became final, and April 25, 2014, the date this petition was filed.  Petitioner, therefore, missed the one-year deadline by more than four months.

Petitioner apparently recognizes that he has missed the one-year deadline to file, but argues that he is entitled to equitable tolling. Dkt. 10 at 1. The Supreme Court has held that "§ 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). The availability of this safety-valve, however, is not a panacea for all late filings. Rather, to qualify a petitioner must demonstrate "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (quotation marks and citation omitted); *see also Lawrence*, 549 U.S. at 336-38.

According to Petitioner, "extraordinary circumstances" are present here because his correctional facility was on "institutional lockdown" "during the month(s) of December 2011, through January 2012." Dkt. 10 at 2; *see also id.* at 6 (March 2, 2015, letter from M. Horn stating that "USP Big Sandy was on institutional lock down in December of 2011 until January 1, 2012"). Petitioner contends that, during the lockdown, he was "prohibited and restrained" from conducting legal research and advancing his case. *Id.*

For present purposes, the Court assumes that Petitioner has diligently pursued his rights. The Court will also assume that the "institutional lockdown" described by Petitioner might, in some circumstances, constitute an "extraordinary circumstance." Even so, the record does not support the conclusion that an "extraordinary circumstance stood in [Petitioner's] way and prevented timely filing" of his petition. *See Holland*, 560 U.S. at 649. As explained above, Petitioner missed the filing deadline by more than four months. The lockdown lasted only one month. *See* Dkt. 10 at 6. Petitioner has no explanation for the additional delay. Moreover, according to Petitioner, the lockdown ended in January 2012—before the one-year limitations period had even commenced. Petitioner does not explain how a lockdown that predated

16

commencement of the one-year filing period could have prevented him from timely filing his habeas petition.  He does not contend, and the record does not suggest, that he was restrained from advancing his case after the lockdown ended.  Accordingly, Petitioner has failed to meet his burden of demonstrating that "extraordinary circumstances" prevented him from filing in a timely manner.  *Cf. Holland*, 560 U.S. at 652-53 (holding that a petitioner's abandonment by his attorney could constitute an "extraordinary circumstance").

Petitioner's remaining arguments are meritless.  He appears to argue that tolling should have extended for a "reasonable period" after denial of his motion to recall the mandate in order to allow him to receive notice of that decision.  *See* Dkt. 10 at 3.  But 28 U.S.C. § 2244(d)(2) does not provide for such an extension, and Petitioner does not contend that he actually received untimely notice or was prejudiced thereby.  To the extent Petitioner argues that the limitations period did not re-start until the time to petition for a writ of certiorari expired ninety days after his motion to recall the mandate was denied, *see* Dkt. 10 at 3, that is incorrect.  The Supreme Court addressed this precise question in *Lawrence v. Florida*, 549 U.S. at 332, and held that "[s]tate review ends when the state courts have finally resolved an application for state postconviction relief" and therefore the one-year period is not tolled during the pendency of a petition for a writ of certiorari after denial of state post-conviction relief.  Finally, even if Petitioner were entitled to an additional ninety days, his petition would remain untimely.

## CONCLUSION

The Court thus concludes that it has jurisdiction to consider the pending petition but that it is time barred under 28 U.S.C. § 2244(d).  The United States' Motion to Dismiss is, accordingly, **GRANTED**, and the petition is **DISMISSED**.

A separate Order accompanies this Memorandum Opinion.


<u>/s/ Randolph D. Moss</u>
RANDOLPH D. MOSS

Date:  October 21, 2015                          United States District Judge